UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

MICHAEL RUBIN AND MICHAEL
RUBIN ASSOCIATES, L.L.C.,

              Plaintiffs,

  - against -

SONA INTERNATIONAL
CORPORATION; SONA LASER
CENTERS, INC.; JAMES H. AMOS,
JR.; HEATHER ROSE; THOMAS R.
NOON; DENNIS R. JONES; COOKIE
JONES; and CAROUSEL CAPITAL,
INC.,

              Defendants.
------------------------------------------------------X

**OPINION AND ORDER**

05 Civ. 6305 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/3/06

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

This case presents novel issues in the wake of the Supreme Court's recent decision in *Buckeye Check Cashing, Inc. v. Cardegna*.[1] Michael Rubin Associates, LLC and Michael Rubin (collectively, "Rubin") bring this action seeking damages and rescission of their franchise agreement, which contains an arbitration clause. Defendants now move to dismiss the action pursuant to Federal

---

[1] – S.Ct. –, 2006 WL 386362, at *4 (Feb. 21, 2006).

1

Rules of Civil Procedure 12(b)(1) and 12 (b)(6), and Section 3 of the Federal Arbitration Act ("FAA"),[2] or, in the alternative, to stay this litigation pending arbitration. Rubin arges that the Court must resolve *first*, whether the agreement containing the arbitration clause was void *ab initio* due to illegality, and *second*, whether the arbitration clause itself was fraudulently induced.[3] Rubin relies on a line of Second Circuit cases holding that "if a contract is 'void,' and not 'voidable,'" a party may litigate "the enforceability of an arbitration clause without alleging a particular defect with that clause."[4] But *Buckeye Check Cashing* makes clear that whether Rubin argues that the agreement is void or voidable, Rubin may only avoid arbitration if it can successfully challenge the validity of the arbitration clause itself.[5] For the following reasons, defendants' motion to dismiss is granted.

---

[2] 9 U.S.C. § 3.

[3] *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 1.

[4] *Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005) (citing *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 67-68 (2d Cir. 2005) and *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001)).

[5] *See Buckeye Check Cashing, Inc.*, 2006 WL 386362, at *4 ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator").

2

## II.  BACKGROUND

Sona International, Inc. ("Sona") is a Virginia corporation with its principal place of business in Chesapeake, Virginia.[6] Sona is the parent company of Sona Laser Centers, Inc. ("SLC"), a Virginia corporation with its principal place of business in Franklin, Tennessee.[7] Sona grants franchises for use of the SLC trademarks and its proprietary hair removal system. Michael Rubin Associates, LLC is a Connecticut limited liability company with its principal place of business in New York, New York, and its principal, Michael Rubin, is a citizen and resident of New York.[8] The gravamen of the Complaint is that defendants made false claims related to SLC's hair removal technology and franchises, causing plaintiffs to sustain damages in excess of one million dollars.[9]

In September 2003, plaintiffs entered into an area development agreement with SLC to develop three franchises in central Connecticut, as well as a franchise agreement with SLC authorizing plaintiffs to open a Sona laser hair

---

[6]  *See* Complaint and Jury Demand ("Compl.") ¶ 10.

[7]  *See id.* ¶¶ 10, 12.

[8]  *See id.* ¶ 4.

[9]  *See id.* ¶ 2.

3

removal center in New Haven, Connecticut.[10] In April 2004, Jim Amos, the current chairman and former chief executive officer of Sona, together with Carousel Capital,[11] purchased all of the outstanding shares of Sona's founders, Dennis and Cookie Jones. They then announced plans to rework the business' concept from a hair removal salon to a "medical spa emporium" ("Sona Med Spa concept").[12]

In November 2004, Rubin opened the first New Haven laser center.[13] Two months later, in January 2005, SLC presented Rubin with an offering circular ("Offering Circular") that included a new agreement for the Sona Med Spa concept.[14] On or about March 7, 2005, Rubin entered into a franchise agreement with SLC ("Agreement") to convert its Sona Laser Center into a Sona Med Spa and use the Sona Med Spa marks.[15] Paragraph 29 of the Agreement provides:

---

[10] *See id.* ¶ 24.

[11] The parties variously refer to this entity as Carousel Capital, Inc., Carousel Capital Corp., and Carousel Capital Partners II, LP.

[12] Pl. Mem. at 2 (citing Compl. ¶ 24).

[13] *See* Compl. ¶ 30.

[14] *See id.* ¶ 42; Offering Circular, Ex. 2 to Declaration of Michael Rubin in Opposition to the Motion of Defendants to Dismiss or Stay this Action.

[15] *See* Agreement, Ex. C to Declaration of Marc P. Seidler, Former Counsel to the Defendants, in Support Defendants' Motion to Dismiss.

4

> We and you agree that, except for controversies, disputes, or claims related to or based on improper use of the Marks or Confidential Information, all controversies, disputes, or claims between us and our affiliates, and our and their respective shareholders, officers, directors, agents, and/or employees, and you (and/or your owners, guarantors, affiliates, and/or employees) arising out of or related to:
>
> > (a) this Agreement or any other agreement between you and us;
> >
> > (b) our relationship with you;
> >
> > (c) the validity of this Agreement or any other agreement between you and us; or
> >
> > (d) any System standard;
>
> must be submitted for binding arbitration, on demand of either party, to the American Arbitration Association.

Rubin does not dispute that this arbitration agreement encompasses all of its claims, or that the non-signatory defendants may invoke the arbitration agreement.[16] Rubin alleges that the agreement is void because the Offering Circular was not registered with the Law Department as required by the New York

---

[16] *See* Defendants' Reply in Further Support of Defendants' Motion to Dismiss ("Reply Mem.") at 1. Plaintiffs raise only two grounds in opposition to the motion to dismiss — that the Agreement is void and that the arbitration provisions were fraudulently induced. *See generally* Pl. Mem.

5

Franchise Sales Act ("NYFSA").[17] Rubin claims that the Offering Circular was also deficient due to "an incorrect cover page; incomplete descriptions of fees; the omission of the identities of directors; [and] failure to include audited financial statements of SLC."[18] Rubin argues that certain drafting errors, misleading references, and discrepancies related to the Offering Circular demonstrate that "there never could have been a meeting of the minds" on the agreement to arbitrate.[19]

## III. APPLICABLE LAW

The determination of whether a dispute is arbitrable under the FAA comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute

---

[17] *See* Pl. Mem. at 3 (citing N.Y. Gen. Bus. L. § 680). The sale of franchises in New York is regulated by the NYFSA, which applies when (i) an offer to sell or buy a franchise is made in New York, (ii) the franchise is actually sold in New York, (iii) the franchise operates in New York, or (iv) the franchisee resides in New York. *See* N.Y. Gen. Bus. L. § 681.

[18] Pl. Mem. at 3-4. Defendants maintain that even if the Agreement was void due to these deficiencies, the two prior franchise agreements, both of which contained an arbitration clause, would then govern this dispute. *See* Reply Mem. at 3.

[19] Pl. Mem. at 13.

sought to be arbitrated falls within the scope of the arbitration agreement."[20] To find a valid agreement to arbitrate, a court must apply the "generally accepted principles of contract law."[21] "[A] party is bound by the provisions of a contract that [it] signs, unless [it] can show special circumstances that would relieve [it] of such obligation."[22]

In *Prima Paint Corporation v. Flood & Conklin Manufacturing Company*, the Supreme Court held that "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud."[23] In the years following *Prima Paint*, the Second Circuit drew a distinction between a contract that was void and one that was voidable, holding that the former would vitiate any arbitration clause but the

---

[20] *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quotation marks omitted).

[21] *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987).

[22] *Id.*

[23] 388 U.S. 395, 402 (1967).

7

latter would still require arbitration.[24] The Supreme Court has recently rejected this distinction, holding that even where the party resisting arbitration claims that the agreement as a whole is void, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator."[25] This principle "must include contracts that later prove to be void."[26]

On the other hand, "if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the 'making' of the agreement to arbitrate — the federal court may proceed to adjudicate it."[27] In such a situation there "must be some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular."[28] This substantial

---

[24] *See Adams*, 433 F.3d at 227; *Denney*, 412 F.3d at 67-68; *ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002); *Sphere Drake Ins. Ltd.*, 263 F.3d at 32.

[25] *Buckeye Check Cashing*, 2006 WL 386362, at *4. This issue is distinct from the issue of whether an agreement between the parties was ever concluded. *Buckeye Check Cashing* "does not speak to [that] issue[]" and "it is for courts to decide whether the alleged obligor ever signed the contract, . . . whether the signor lacked authority to commit the alleged principal, . . . and whether the signor lacked mental capacity." *Id.* at *3 n.1 (citations omitted).

[26] *Id.* at *5.

[27] *Prima Paint*, 388 U.S. at 403-04.

[28] *Campaniello Imp., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 667 (2d Cir. 1997).

8

relationship "requires more than a mere claim that the 'arbitration clause is an element of the scheme to defraud;' it must include 'particularized facts specific to the ... arbitration clause which indicate how it was used to effect the scheme to defraud.'"[29] A party may not "establish a connection between the alleged fraud and the arbitration clause in particular merely by adding the allegation that the arbitration clause was a part of the overall scheme to defraud."[30]

## IV. DISCUSSION

### A. Illegality of the Agreement

Rubin argues that this Court should not enforce the agreement to arbitrate because of defendants' violations of the NYFSA. The NYFSA is a comprehensive statutory scheme that seeks to prevent fraud in the sale of franchises and imposes criminal penalties and civil liability on persons who knowingly violate its requirements.[31] The statute makes it unlawful for any person to offer to sell or sell any franchise without filing an "offering prospectus" with

---

[29] *Garten v. Kurth*, 265 F.3d 136, 143 (2d Cir. 2001) (quoting *Campaniello*, 117 F.3d at 667).

[30] *Id.* at 143-44 (citing *Campaniello*, 117 F.3d at 667).

[31] *See* N.Y. Gen. Bus. L. §§ 680, 690, 691.

9

the New York Law Department.[32] Rubin argues that because the Offering Circular was not filed with the Law Department, the offer to sell the franchise was unlawful, the entire Agreement was void *ab initio*, and the arbitration clause cannot be enforced.[33]

Rubin's argument is similar to one advanced in *Buckeye Check Cashing*, where "[t]he crux of the complaint [wa]s that the contract as a whole (including its arbitration provision) [wa]s rendered invalid [under Florida law] by an usurious finance charge."[34] In *Buckeye Check Cashing*, the plaintiffs alleged that the agreement containing the arbitration clause "violated various Florida lending and consumer-protection laws, rendering it criminal on its face."[35] The

---

[32] *See* Pl. Mem. at 5-6. Under the NYFSA, "[i]t is unlawful and prohibited for any person to offer to sell or sell in this state any franchise unless and until there shall have been registered with the department of law, prior to such offer or sale, a written statement to be known as an 'offering prospectus' concerning the contemplated offer or sale, which shall contain the information and representations set forth in and required by this section." N.Y. Gen. Bus. L. § 683.

[33] *See* Pl. Mem. at 5-6. In support of this argument, Rubin relies heavily on *Sphere Drake Insurance Limited*, which held that "[a] party alleging that a contract is void – and providing some evidence in support – is entitled to a trial on the contract's arbitrability." 263 F.3d at 32. However, the Supreme Court's recent decision in *Buckeye Check Cashing* renders this argument moot. *See* 2006 WL 386362, at *3-*6.

[34] *Buckeye Check Cashing*, 2006 WL 386362, at *3.

[35] *Id.*

10

Supreme Court held that an arbitrator, not the trial court, should resolve whether a contract is illegal and void *ab initio*.[36] The Court reasoned that section 2 of the FAA "must include contracts that later prove to be void,"[37] and under *Prima Paint* "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."[38] As a result, Rubin's argument that arbitration should not be compelled because the contract as a whole is void must be rejected.

### B. Fraudulent Inducement of the Arbitration Clause

Rubin also argues that the "arbitration provision itself was induced by fraud" because the Offering Circular and Agreement's arbitration provisions contain certain discrepancies in violation of the NYFSA.[39] It is a violation of the NYSFA for any person to employ a "scheme or artifice to defraud" or to make an "untrue statement of material fact in any offering circular or to omit any material fact" in connection with the offer or sale of a franchise.[40] In order to succeed on

---

[36] *See id.*

[37] *Id.* at *5.

[38] *Id.* at *6.

[39] Pl. Mem. at 12-14.

[40] N.Y. Gen. Bus. L. § 687.

11

its fraudulent inducement argument, Rubin must demonstrate that the arbitration provision was induced by fraud and include "particularized facts specific to the ... arbitration clause which indicate how it was used to effect the scheme to defraud."[41] Rubin must also demonstrate that SLC intentionally misrepresented a material fact and that Rubin reasonably relied on that misrepresentation.[42]

The discrepancies noted by Rubin are both immaterial and unrelated to the parties' agreement to arbitrate. The Offering Circular contains a table, excerpted below, listing the franchisee's "principal obligations under the franchise agreement and other agreements."[43]

| Obligation | Section of Franchise and Related Agreement | Item in Disclosure Document |
|---|---|---|
| (x) Dispute Resolution | 29.6 and 32; 17 of User Agreement | 6 and 17 |

Rubin points out that no "User Agreement" was included with the Offering

---

[41] *Garten*, 265 F.3d at 143.

[42] Whether Tennessee or Virginia law governs the Agreement, the elements of fraudulent inducement are the same. *See Black v. Black*, 166 S.W.2d 699, 705 (Tenn. 2005); *Yuzefovsky v. St. John's Wood Apartments*, 540 S.E.2d 134, 142 (Va. 2001).

[43] Offering Circular at Item 9.

12

Circular, and the Agreement contains no section 29.6.[44] But these drafting errors are immaterial, because section 29 of the Agreement includes the parties' agreement to arbitrate their dispute. Item 17(u) of the Offering Circular, entitled "Dispute resolution by arbitration or mediation" includes an unambiguous reference to section 29 of the Agreement.

Rubin also argues that the references to section 32 of the Agreement and section 6 of the Offering Circular are misleading because they do not pertain to dispute resolution.[45] Section 32 of the Agreement waives the franchisee's rights to punitive damages and a jury trial, and section 6 of the Offering Circular refers to the franchisee's obligation to pay SLC's costs and attorneys' fees in the event of the franchisee's default on its obligations. These sections are clearly relevant to dispute resolution.

Additionally, Rubin points to conflicting choice of law provisions.[46] Item 17(w) of the Offering Circular requires application of the FAA and Virginia law, while section 32 of the Agreement states that Tennessee law applies. While this discrepancy may call into question the choice of law provision under the

---

[44] *See* Pl. Mem. at 13.

[45] *See id.*

[46] *See id.*

Agreement, it has no bearing on the parties' agreement to arbitrate.

Unrelated drafting discrepancies do not demonstrate that the arbitration agreement was procured by fraud or used to effect a scheme to defraud.[47] Rubin has not pointed to any *material* discrepancy, and has made no attempt to show that defendants *intended* to mislead Rubin with these discrepancies. Nor has Rubin argued that it reasonably relied on any misrepresentations in agreeing to arbitrate. Therefore, Rubin's claim that the arbitration clause was fraudulently induced fails as a matter of law.

### C. Motion to Dismiss

The only remaining issue is whether to grant defendants' motion for a stay of arbitration or their motion to dismiss the case in favor of arbitration. Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.[48] In making this determination, the Second Circuit urges district courts to consider the fact that

---

[47] *See Garten*, 265 F.3d at 143; *Campaniello*, 117 F.3d at 667. *Cf. Moseley v. Electronic & Missile Facilities, Inc.*, 374 U.S. 167, 171 (1963) (finding an arbitration agreement was induced by fraud where the arbitration agreement was used to obtain a "great amount of work and material from . . . subcontractors without making payment therefor and to 'browbeat' . . . subcontractors into accepting much less than the value of their claims").

[48] *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

14

"dismissal renders an order appealable under [9 U.S.C.A.] § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under [9 U.S.C.A.] § 16(b)."[49] Under the circumstances, I conclude that dismissal is appropriate.

## V. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this motion [Docket No. 13] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
March 2, 2006

---

[49] *Salim Oleochemicals v. M/V SHROPSHIRE*, 278 F.3d 90, 93 (2d Cir. 2002).

## - Appearances -

**For Plaintiffs:**

W. Michael Garner, Esq.
Dady & Garner, P.A.
230 Park Avenue, 10th Floor
New York, New York 10169

David Boies, Esq.
Boies Schiller & Flexner LLP
570 Lexington Avenue
16th Floor
New York, New York 10022

**For Defendants:**

Donald L. Rosenthal, Esq.
Scarola Ellis LLP
888 Seventh Avenue, 45th Floor
New York, New York 10106

Alice Richey, Esq.
Kennedy Covington Lobdell & Hickman, LLP
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, North Carolina 28202